Roberts. Roberts. Thank you, Mr. Chief Justice, and may it please the Court, the California Supreme Court ruled that hundreds of plaintiffs who were not prescribed a drug in California, who did not take it in California, who lacked any injury in California, and who had no other connection to California, could sue in California. The Court reasoned there was a sliding scale whereby the defendant's other conduct with other Californians could establish specific jurisdiction. Those concepts have some footing in the law, but that footing is limited to general jurisdiction, which is lacking here, and this Court has never permitted specific jurisdiction in such circumstances, which is presumably why Respondents don't bother defending the California Supreme Court. Instead, they meant a whole new test, never before seen by any court, whereby an ad hoc reasonableness inquiry with any number of undetermined balancing factors will create jurisdiction. Kennedy. You conceded that there's fair play in substantial justice. That almost, not quite, perhaps, takes away the due process argument, which basically has to be the argument that you're making here. Justice Kennedy, I don't think that's actually what we conceded. What we did say is that the reasonability, reasonableness inquiry is with respect to the third kind of safety valve factor. We didn't make the argument with respect to the third prong, but we absolutely did make the argument that jurisdiction here was unreasonable below. At pages 4 and 18, in the California Supreme Court brief, we made very clear. We said it would, quote, ''offend basic notions of federalism and fairness.'' At page 4, at page 18, we said, ''Instead of achieving jurisdictional fairness, their rule would redistribute the burden of defending mass torts in a lopsided way.'' Sotomayor.  Sotomayor. How is it unreasonable to have ---- How is it unreasonable? Yes. Now, you're not fighting that pendant jurisdiction permits a court to take multiple claims of damages nationwide or even worldwide, and even unrelated causes of action and bring them to a jurisdiction, correct, by one plaintiff? You're not claiming that that offends due process? Pendant jurisdiction, at least personal jurisdiction, is only applied in some Federal courts by dint of common law. We're absolutely fighting it, and it's not the law in any court, any State court anywhere, the pendant personal jurisdiction. So how do you deal ---- so you're saying that pendant jurisdiction for claims that in some way are connected violates due process? You're going further? We're saying that there has to be a causation between the underlying cause of action and every single individual action. So you're destroying pendant jurisdiction on every level? We're not destroying it. There is no pendant jurisdiction for State claims as it exists right now. This Court has said time and again, starting with International Shoe, the relevant locus of analysis, Justice Sotomayor, is always by cause of action. That's assuming I buy your argument. Let's put it aside. But I'm just saying that that has been the law in all we're doing. But your position right now is that in no suit will one court, say court, ever be able to hear the entire controversy between a plaintiff and a defendant? Oh, definitely not. Heavens me, that is not our position at all, Justice Sotomayor. So, for example, every place in which there is general jurisdiction, you can have that court hear it. Only when there's general jurisdiction. No, not ---- that's one place. So Delaware, for example, here. But there's also the ability for specific jurisdiction in places in which the underlying activity was launched. So here they have, for example, deceptive marketing. Yes, for example, the drug that everyone bought all over the country was manufactured in one place, even though it wasn't the principal place of business or the place of incorporation. Right. It may be that that's enough for specific jurisdiction, depending on what the underlying claim is exactly, Justice Ginsburg. The question here is, can they glom on to the 180 million pills that Bristol-Myers has sold in California as to which ---- Sotomayor, for years we've been approving pendant jurisdiction or at least not taking any case that disturbed it, and there are cases in which we've just assumed it. What's the efficiency there? And what's the reasonableness there? So first of all, Justice Sotomayor, I disagree with the premise. I don't think this Court's ever accepted the idea of pendant jurisdiction of State court claims that are without causality. Indeed, our brief at pages 19 to 21 explains every precedent of this Court lines up on the causality principle, and your most recent decisions in Goodyear and Daimler I think make this very clear. Now, with respect to the reasonability or the efficiency, I think the first thing to say is their rule doesn't create any efficiency at all. That is, just take a look at the facts of this case. Even after the California Supreme Court ruled, you already ---- you still have action going on in New York, coordinated actions. You have law on MDL in New Jersey, and you have lawsuits in Delaware. Petition appendix page 72 says before you had lawsuits in Arizona, Illinois, Hawaii. Kennedy, if this went forward just with the California plaintiffs and Bristol-Meyer did not prevail, would there be issue preclusion in other States, assuming that judgment was final? I don't think so. And our brief, our reply brief goes, you know, cites a bunch of, you know, literature on this, that basically because there's so much divergence in the underlying causes of action, collateral estoppel just doesn't work in this context. Ginsburg. But if they all allege the same basic flaw in the drug, the drug was defective because, and that's determined in suit number one, I think that that would be issue preclusion. But the problem is there are so many different substantive standards as a matter of actual reality, as opposed to, you know, kind of a theory about deceptive marketing or something. They do differ so much from State to State as a matter of practice.  Well, let's assume that New York and California are basically the same. The facts are basically the same. If there's a California judgment that's valid, I assume the plaintiff's going to argue for issue preclusion. And it seems to me that actually helps you because it shows that this rule that you're proposing is not so inefficient as the Respondent would say. Absolutely, Justice Kennedy. There's no part, there's no, you know, we can, of course, waive that and see collateral estoppel. Mr. Katyal, could we go back to a form of Justice Kennedy's first question? Which is just, could you explain what defendant's interests are at stake here? In other words, you know, usually we've looked to fairness for the defendant when we make the due process inquiry. So what is the unfairness here, given that there is another suit that's going to be going forward in California, and what Mr. Goldstein wants is just for additional claims of the exact same kind to be joined to that suit? Exactly. So there's three values this Court's isolated. Federalism, predictability, and fairness. The federalism- Can we just start with the fairness? Absolutely. So the fairness concern, and it's going to take me about 45 seconds to walk through the life cycle of this- You've timed it. But I have. And, but our view is to affirm Bristol Myers in, to affirm the judgment below where to accept his theory is going to be for the, you know, be complex. It's going to be inefficient and unfair and do something this Court has never blessed before and certainly that Bristol Myers didn't open itself up to. So the first thing that would happen in these lawsuits is a determination of choice of laws. He acknowledges there are 575 out-of-state plaintiffs from 33 states. So the California court's going to have to first figure that out. Second, it's then going to have to apply California procedure to all of these cases, which is markedly different than the procedure in the places in which Bristol Myers sold the drugs as to which caused the underlying injury. So for example, California has different rules about summary judgment. It's really hard to get summary judgment, very easy to go to trial. It's also, they don't have a Daubert rule, so they have very lenient permissive testimony with respect to experts. That isn't something Bristol Myers bought into when they sold, for example, a drug in Ohio to an Ohio plaintiff. Then, you get to the trial. And this is, I think, the most important part, because their brief points it out as, oh, this is efficient and it's coordinating all of these actions. Take a look at Joint Appendix page 74, which is their jury trial demand. This is not one jury trial. They are seeking 661 individual jury trials. And in each of those jury trials, the court is going to have to determine a whole variety of things which are going to diverge from case to case. Things about different rules about legally, different states have different rules on contributory negligence. They have different rules on the learned intermediary doctrine, which is a critical doctrine in failure to warn cases. Some states don't have it at all. Others restrict it in all sorts of various ways. There'll be fact determinations about what is specific injury and not. And that is why this court- Sotomayor, but I'm sorry, those issues have to be decided in the 600 individual cases anyhow. The question is, what's the unfairness of coordinating the common questions in one place? When there is so much overlap in the essence of the claim, which is false marketing. So, Justice Sotomayor, first of all, I don't think that they would be coordinated. They'd be decided at individual trial by trial. I don't think they'd be coordinated. To the extent you wanted coordination, the federal system obviously has a way to do that. But it seems you're conflating two things, Mr. Cottiel. I mean, individual, a lot of individual California claims can be joined. And then we can have an argument about what should probably be joined and what can go off individually. But that's a different question than the question in this case, which is, why is it unfair to glom on Texas claims and New York claims to the California claims once we already have a mass action which will have multiple jury trials? So, and the reasons are both procedure and substance. So procedurally, you'll be playing by different rules than what the defendant has accepted. And this court's always said one of the goals in specific jurisdiction litigation is to make sure and be up to businesses, particularly small businesses like the plaque brief points out. Look, if you enter a jurisdiction, here's what you're going to face. And Bristol Myers doesn't disagree. When they sold 180 million pills in California, they opened themselves up to the jurisdiction for those pills. The question is, can the folks from the 33 other states sue on that? And then that does create substantive unfairness or different juries. There's all sorts of things that happen. And if I could, Justice Kagan, just return to the first two values. Predictability is really important. There are 4 million people who take Plavix in America. If you accept their rule, it's not as if they have to sue in California. Each of those people can sue in any of the 50 states. That's 200 million possibilities. That is the absolute- But you already know, because this is a nationwide marketing that you do, nationwide drug, you already know that you're subject to jurisdiction in any of the 50 states and have to be prepared to confront jurisdiction in any of the 50 states. But Justice Kagan, critically, we know that we confront it with respect to each individual state's procedure and substance. We don't accept the idea that plaintiffs can play by at least common denominator rules and file Ohio claims in California or Alaska. I guess what I'm saying is that the unfairness aspect of this is what I really want to drive at. Because predictability just honestly doesn't seem like what's at issue here, given that you know it's perfectly predictable to have litigation in any of the 50 states. So the question is, why is it unfair to have more litigation than you would in one of those states rather than another? Justice Kagan, it's not a numbers game. It's not the amount of litigation. It's the way in which the litigation unfolds, both procedurally and substantively. And this court's specific jurisdiction jurisprudence has always tried to say to defendants, look, we want you to know the consequences that follow when you enter into a new market. And when Bristol-Myers, for example, sells to an Ohio plaintiff, I don't think they sit there and think, oh, that allows me to be sued in California. Of course it can be sued in a general jurisdiction. Could you make this as concrete as you can for me? I'm assuming that your interests are the flip side of the plaintiff's interests. So why is it that a person would choose to sue in California? And why is it that Bristol-Squibb does not want more suits than necessary to happen in California? Well, I suppose one thing, the plaintiffs only have one thing to think about, which is what's kind of jurisdictionally advantageous for them, either procedurally or substantively. For us, when we're, for example, thinking about where to incorporate, we've set up our principal place of operations in New Jersey. I mean, nobody could say New Jersey is kind of a defendant-friendly state. It's done so for all sorts of reasons about employment and things like that. And so I do think this court has identified a concern in this area about forum shopping. We do think that concern exists here. But I think that kind of underlying this is a notion about predictability in what their rule does, fairness. And then federalism, which I'd like to get to, because this court's identified it, starting Worldwide Volkswagen, as a critical thing. And the idea that Ohio plaintiffs, that the state of Ohio can't adjudicate these cases because they're grabbed by California, is something, again, that this court hasn't- Kagan, I'm getting a little bit stymied here, because I thought you were going to come at me with saying, look, the juries in California are different, or there's punitive damages in California when there's not someplace else, or the substantive rules might be different. And I'm not hearing any of that from you. All of the above, Justice Kagan. There's a bunch of stuff wrong with this rule. All of those things. Now, I'm starting here. This is my problem. Before international shoe, I think basic rule with qualifications, et cetera. A State is a sovereign and can open its doors to whom it wants. End of the matter. No, that isn't quite, but basic rule. Now, along comes international shoe. No, you can't, not if it's unfair. Hence the questions. Now, if that's what it is, if that's the basic way to look at it, and I hear the answers you've given, many but not all of those answers, I could, I think, have said the same thing in respect to multidistrict litigation. And so it sounds to me, if I'm right on that, which I might not be, you'd have to say which ones aren't, that what we need here is a rule. We need a panel. We need Congress. We need the multidistrict panel. But that isn't the Constitution. And then what I fear is if we say it's the Constitution, what do we do to either the class actions or maybe even multidistrict litigation? I think you could solve that problem by putting the jurisdiction transfer to our court. But, you see, that's why I think what is it specifically that's special? Sorry. So, Justice Breyer, we think you should write an opinion for us that doesn't deal with multidistrict litigation or class actions, and that's easy to do. The first thing to do is do what this Court did in Omni, capital footnote 5, and say Federal is different than States, that the due process guarantees apply differently precisely because of the law. Sotomayor, I have no idea how you draw that line. Because there's not rival risk. If it is due process, then how do you say that it's not due process merely because it's Federal? For two reasons, because it's not rival risk jurisdiction, it's not Ohio v. California and every State in between, and because the whole question in due process is minimal contacts, and people are deemed to have minimal contacts with the Federal government as a sovereign. That's why this Court has always bracketed. Sotomayor, but this is not a Federal claim. This is a State law claim that would be brought in Federal court. Why would due process be different? The constitutional rule that Justice Breyer was asking would apply differently. That's why this Court has always reserved it. And multidistrict litigation, of course, operates very differently. It's only pretrial coordination. It's not trial. And so it's a very, very different process. Ginsburg. Could Congress make it for trial? Right now the multidistrict litigation panel is only for pretrial. It can be a trial if everyone consents. But absent consent, you have to go back to where you began. But would there be any constitutional impediment to having a multidistrict statute amended so that the form in which the cases are consolidated could go on to the court of merit? Justice Ginsburg, I certainly think the Court could write an opinion which says that that is perfectly permissible and still reject Mr. Goldstein's theory 100 percent, which is what this Court has done time and again. May I reserve? Thank you, counsel. Ms. Kovner. Mr. Chief Justice, and may it please the Court. This Court in Goodyear and Dahmer rejected approaches to general jurisdiction that would allow a plaintiff in one State to sue a national company for product liability in all of the other 49 States, calling those approaches exorbitant and unacceptably grasping. The California Supreme Court misunderstood this Court's decisions when it allowed that same result under the label of specific jurisdiction. As this Court explained in Goodyear, specific jurisdiction lets a State exercise authority over activity within its borders, which it has a strong interest in controlling but a State lacks a comparable interest in exercising authority over out-of-State defendants for entirely out-of-State conduct. Ginsburg, if this were a case where the nonresident plaintiffs were suing Bristol-Meyer in California, then everything you say follows, but that's no one is urging that on behalf of out-of-State plaintiffs. It's essential to this case is that there be a case of Californians against Bristol-Meyer's, and this is tagged on to it. That's right, Your Honor. So I agree that the question here is whether the fact that the out-of-State plaintiffs have joined their claims in a single lawsuit with California plaintiffs makes a difference, and I don't think that it does if you looked at the interest that the Court has considered in its specific and general jurisdiction decisions. Because I don't think that California has a greater interest in exercising control over the conduct of out-of-State defendants in another State just because those claims have been joined within State plaintiffs. I think the principal reason that Respondent suggests that California does have that interest is an efficiency interest, but this Court has defined general jurisdiction in a way that allows plaintiffs to bring their suit together in a single forum for efficiency purposes. Ginsburg-McKesson, there are two defendants here. McKesson is the California corporation or principal place. Is there another place where these plaintiffs could sue McKesson as well as Bristol-Meyer? So I think it's not clear. We agree that personal jurisdiction is defendant by defendant, so there may be some cases, and this may be such a case, in which there's not one place where any group of defendants can be joined together. We think generally there will be, because if the allegation is that two defendants have engaged in a course of conduct together, there's going to be some place where those defendants engaged in that course of conduct. Kennedy, but could the plaintiffs here have filed against McKesson and then, under California procedure, added Bristol-Meyers as a necessary party? I'm not sure as a matter of California law. We don't think that's a matter of California law. Assume California law allowed that. Would that be consistent with due process? No, we don't think that the procedure that was used would make a difference. We think the problem with McKesson here, and I think page 59A to 60A of the opinion below makes it clear, is it's not clear what the Respondents are alleging that McKesson did. They're not alleging that McKesson distributed the drugs that plaintiffs received. If McKesson did, then there would obviously be some conduct that occurred in California that was connected to both plaintiffs that would make a lawsuit. Sotomayor, according to the logic of your position, assume a foreign corporation. Under your theory, that foreign corporation might be sued in the particular State in which an injury occurred, but since it has no home State in the United States, that means that in that situation there's no place for plaintiffs to come together and sue that person, correct? I think that it might not be in the United States. There will not be a general jurisdiction location for international plaintiffs. Sotomayor, products are sold here across the United States. All the marketing, everything is the same. The theory is the same. But because it's a foreign State, there's no one jurisdiction, a foreign company, there's no one jurisdiction in the United States now, under your theory. That's true for some. There's an amicus brief here that talked about all of the criminal laws that would be subject to questioning under your theory of constitutional due process. What is your response to them? Is it the same as Mr. Cachelle's? We'll face that when we get to it? No, I don't think that the Court has applied its civil personal jurisdiction cases in the same way in a criminal context. The United States has a strong sovereign interest in regulating certain conduct when it occurs overseas. Sotomayor, if due process says that you can't hail someone into a court with which they've had no contacts, how do you justify the many criminal statutes we have, RICO, CERCLA, there's a whole bunch of them, that permit the joinder of all of these defendants in one indictment? Well, Your Honor, if we're talking about criminal statutes, these are statutes that are based on the idea that this is conduct that exercises some. All of them have a civil component. Yes. And with respect to the civil component, I mean, courts have looked to personal jurisdiction considerations. We think if it's a Federal statute, the relevant question would be Fifth Amendment analysis. But if you look to the statutes that Respondent cites, we're talking about statutes that exert some kind of – that involve conduct that exert some kind of effect on U.S. citizens or the United States. Counsel, one thing we haven't talked about, we've talked a fair amount about fairness and predictability, but we haven't talked about Federalism. I know Mr. Kochel was trying to get to that. I was hoping you might just give us a couple of words about what implications there are for the interests, say, of Ohio in administering its own procedures with respect to its own citizens for torts that occur in its own State. Yes, Your Honor. So going back to Worldwide Volkswagen and continuing to do that. Or McIntyre, maybe. Yes. And continuing through McIntyre, this Court has made clear that a specific jurisdiction needs to be defined with an eye to the view that there are 50 different States and that other States are also going to have an interest in adjudicating conduct that occurs within their borders. So if specific jurisdiction is defined in a very permissive way that allows States that don't have a strong interest in regulating the conduct of the State. So who – which State are we worried about here? Are we worried about the plaintiff's State or are we worried about the defendant's State? I think there are two States that have a very strong interest, at least two States that have a very strong interest in providing a forum for the conduct at issue here. It's States where the plaintiffs were injured and States where the defendants are at home, because States have an interest in regulating the conduct of their citizens. Kagan. So on the plaintiff's side, that seems a pretty attenuated interest, if – because usually when we say that the State has an interest, it's in protecting their own citizens and providing their own citizens with a forum. But here, the citizen has decided he doesn't want that protection, he wants to go someplace else. It seems, you know, a little bit weak to say that the State has a very strong interest in protecting its own citizen that doesn't want to be there. I don't think so at all. I think, Your Honor, that the State has a strong interest in regulating the conduct that occurs within its borders and defining what's fair with respect to how that conduct is adjudicated. And that's not just the State. And it's also true, it would seem to me, that a State, A, has a very strong interest in confining State, B, to State, B's territorial. That's right, Your Honor. Which doesn't have – that's why due process is the same for Federal and State, but there's a different set of criteria to which you apply it. If the States are limited in their jurisdiction nationwide, the Federal government isn't. That's right, Your Honor, and that's exactly what this Court has already said in Worldwide Volkswagen and Necastro. And we think if the Court applies that principle here, it counsels strongly against expanding specific jurisdiction to allow States to reach claims in which they don't have an interest, because it does tend to crowd out the jurisdiction. Kennedy, Justice Breyer. What is your solution to mass torts? So we think there are a couple solutions. Claims like this, which are, I think, mass tort claims, can be brought in a jurisdiction of general jurisdiction. They can also be brought in Federal courts and consolidated through schemes like the MDL scheme. These are both solutions that provide efficiency. And, of course, Congress can step in if it sees a particular kind of mass tort that it doesn't – that it wants to provide an additional forum for. It's done that for specific kinds of, you know, for instance, mass accidents. So that's an additional vehicle. There are forums where claims like this can be brought efficiently. Kennedy, Justice Breyer. I'm sorry? How? How? How can Congress step in if it's constitutional? Because Congress is acting under the Fifth Amendment. And as this Court indicated in DeCastro, and the Fifth Amendment is different from the Fourteenth? Well, it's different in the following sense. It's different in the sense that the sovereign is different. And so the kind of context that you're talking about in the Fifth Amendment are contexts with the national sovereign. So in that case, you would look to does this company have the relevant minimum context to make it fair for the national sovereign to exercise control? And that would be the United States as opposed to an individual State. So if it's a Federal statute, and not hemmed in by State boundaries, it can create a nationwide claim. That's right, Your Honor. And the Court – and courts of appeals have agreed on this. There are, you know, nationwide service of process provisions in which Congress has exercised that kind of authority. And there's been no disagreement in the court of appeals. Courts of appeals, although this Court has reserved the issue itself in omni, we think it's a different sovereign, and so a different kind of context that would be. Could you say how you would phrase the rule that you would like us to apply in this situation? Yes, Your Honor. I think the Court could simply say in this case that for purposes of specific jurisdiction, when we're talking about conduct that arises out of activity within the forum, there has to be something that's connected to the claim, some causal connection between the individual claim and the forum, activities in the forum. Thank you, counsel. Thank you, Your Honor. Mr. Goldstein. Mr. Chief Justice, and may it please the Court, we believe that four facts make – are sufficient to establish specific personal jurisdiction in this case, if I could just very briefly summarize them. The first is that the defendant engaged in the systematic and continuous exploitation of this market, California, the forum, with respect to the matter that gave rise to the claim, so the sale of Plavix. The second is the case was decided below, and certiorari was granted on the understanding that litigating here would not place a significant additional burden on BMS, it wouldn't be unfair, because the claims arise not from parallel activity, but the same activity by BMS. It's the same legal theory and the same operative facts. The third is that there is a significant governmental interest that is implicated by this case in that the courts are able to bring together a large volume of litigation that would otherwise be atomized across the States. And the fourth is that there is what – The States or the State? That would be atomized across the States. My point is that, you know, we have a large number of cases about Plavix, and what's happening here for the benefit of the States, this is discussed in Keaton, is to bring the cases together so that the multistate judicial process can operate more efficiently. But that's really not possible. I mean, it would be ideal if we could get all the Plavix plaintiffs together in one forum. We have no way of doing that, because plaintiffs have many choices. And so some individual plaintiffs chose to hook up with the California. But there's lots of – there's one footnote that says all the cases, some are multidistrict cases, some are multiple plaintiff cases. So whatever we do in this case, there's still going to be a lot of Plavix litigation spread around the United States. Yes, Justice Ginsburg, if I can come back in one second. I think it's a fair point. I want to give you my sense of why our rule is better with respect to that. And could we have the fourth? I interrupted you at first, but what was the fourth? Right. The fourth is that this case has what Justice Breyer in the Castro talked about as a special feature, and that's McKesson. What we have here is Bristol-Meyers' decision to contract with a California company to distribute this drug nationally. McKesson distributed 700,000 pills of Plavix outside California a week. And we think that's quite significant for multiple reasons. It is a choice by BMS, a contact that involves California in the nationwide distribution. In addition to the plaintiffs here. Okay. A couple of things about that. It is impossible to trace a particular pill to a particular person, because what happens is you're admitted to a hospital, you're given Plavix. You then go see your doctor, who gives you a sample, and then prescribes it to you, and then you may be in an assisted living facility. It's not possible for us to track particularly to McKesson. My point is simply is that they made a choice to contract with a major national distributor of the drug located in California, and that has a significant point for California's specific interest in this litigation. Counsel, I think Justice Ginsburg's question is still pending. Thank you. And, Justice Ginsburg, you're quite right that we don't have a perfect solution. But what we can do is aid the State's judicial systems by allowing the litigation to be centralized. You just compare our rule with theirs. The upshot of their rule, precisely because in multi-defendant mass tort actions you don't have a common general jurisdiction, is that there's going to be a bunch of litigation in Ohio and Nevada and Texas and the like. But that's a very patronizing view of Federalism. California would tell Ohio, oh, don't worry, Ohio, we'll take care of you. That's not the idea of the Federal system. The Federal system says that States are limited. Sir, let me just analogize this case to Keaton, if I might, because there you have a very similar situation, and that is you have the New Hampshire State courts, or a New Hampshire court, and it is adjudicating the claim. There was an injury in New Hampshire to that plaintiff. That's not present here. That is absolutely correct. But what the court said was that that wasn't the special feature of it, and that was that that claim would otherwise be litigated in the 50 States and that the States had an interest in centralizing it. If I could just make the final point about the testimony. Ginsburg. Well, that's peculiar to libel claims. I mean, what do they call it, the single? Publication. Exactly. And that's why, I mean, you've cited Keaton twice. It's cited innumerable times in your brief. It is completely sui generis in that respect. It involved a single publication rule. And what that is, it says, this is the restatement, as to any single publication, only one action for damages can be maintained. All damages suffered in all jurisdictions can be recovered in that one action, and a judgment for or against the plaintiff upon the merits of that bars any other action. It's a very, very unique situation that, you know, maps on the position you want to apply generally. And it seems to me that that's a real overuse of Keaton. Okay. If I could just give you my thoughts about that. It has never been cited subsequently by the court. It has cited Keaton multiple times, never limited in that sense. And though the single publication rule exists in most, not all States, remember, Keaton quite clearly says it doesn't exist in every State, but all of the claims are allowed in New Hampshire, but it still has to be constitutional, is my point. And that is, the States can make whatever decisions they like, but Keaton makes quite clear that each publication is a separate libel, each arises under each individual State's laws. My general point is that there are two Federalism interests here. I quite take the point that California doesn't have an interest in adjudicating Ohio's claim, and it is territorially limited. On the other hand, the Court has recognized in cases like Keaton that the States do have an interest in trying to make this simpler, not more complicated. Well, how about the interest of the State that Bristol-Myers resides in? In other words, they might have an interest in not having their citizens hailed into court against their will in another part of the country. Yeah, I don't think that can be right. And I would point out that Mr. Katyal and the United States agree that specific personal jurisdiction outside the Home Forum is entirely appropriate here. They just want it to be in New Jersey. I don't understand how any of their arguments map on to the concession that a New Jersey State court, which is not their home State, could adjudicate the claims from Ohio, Nevada, and Texas, just like California here, when all of the same things are true. That State is adjudicating a claim from another place. If I could just make the final point. Breyer. The obvious is that this is your home State. It isn't, though. Well, let's imagine. It's a home or whatever, and you say to the businesses in that State, you make it you, you do business here, you make things here. I don't care if you're home or not. Make things here. Do business here. Incorporate here. Now, you can be sued in any State still under special jurisdiction where you cause harm, but you can't be sued in States where you didn't. Now, that I think is what they're saying is the special Federalism interest of either the home State or the State where they did the manufacturing or the State where they, you know, whatever the other one is where you count as a home State. That does sound special. Well, all I can say is that in New Jersey, the example of New Jersey in specific jurisdiction, they would be adjudicating the claim of somebody who was harmed in Ohio, even though it's not their home. But I did really want to focus on the special interest that California has here because of the role of McKesson. You know, the Court is involved in the fact that the State is a home State. Roberts, but Mr. Goldstein, that's a very fact-specific argument. And we took this, I thought, to decide the legal question whether we have some sort of causation requirement or permit this sliding scale business that California engages in as a legal matter. And on that, I just wonder if we move to this all-things-considered approach, are we collapsing what had been previously two separate due process inquiries? One was purposeful availment, and the other was fundamental fairness. And as I hear it, really it all just boils down to fundamental fairness. And as Judge Silverman said, the length of the Chancellor's foot. So I'm just wondering what happens doctrinally to the first test. Does it have any bite? And if it doesn't, does that suggest some problem doctrinally, formally with your position? Goldstein, if I could give you a narrow-end answer and then a bigger-picture answer. The narrow answer is that our view of the relatedness inquiry that is articulated in International SHU does require that they engage in what Keeton and International SHU refer to as the continuous and systematic exploitation of the market. That's a contact. And the relationship has to be that it is the same claim on the same operative facts. There's no general way to do it. Kagan. Kagan. Kagan. But that's like saying, Mr. Goldstein, that the claim relates to another claim that relates to contacts with the forum. I mean, I guess I'm missing what the relationship is between an Ohio plaintiff's claim and the defendant's contacts with the forum that doesn't go through another claim. Goldstein. Oh, here's how we understand that it would operate, and that is the California court is providing a forum to adjudicate a claim about the lawfulness of BMS's design and manufacturing and distribution of this drug, Plavix. That is activity that didn't occur in California. Okay? That is activity that they quite clearly say happened in New Jersey. So the California court is going to make an adjudication of that. Our point is simply that when the California court has the unquestioned power to determine under a legal standard that that was lawful on a set of facts, it's not limited to that. No, I understand that that's your point, but I guess what I've always thought that our personal jurisdiction cases require is somebody to state in state something like this. The plaintiff's claim relates to or arises out of the defendant's contacts with the forum state. So here, Bristol-Myers contacts with California. And I just want you to tell me how an Ohio plaintiff's claim arises out of or relates to the defendant's contacts with California. It does because why? It does because the relevant contact is the nationwide activity. That has to be correct, by the way, because just take a company that is trying to exploit, manufacture something in New Jersey, hands it off to a distributor, knowing that the distributor will exploit the California market. The only thing the defendant does is do something in New Jersey, right? It's not activity in California that gives rise to specific jurisdiction. The California court's jurisdiction attaches to the activity outside. It's the same conduct. It is not parallel. Kagan. Kagan. Let me see if I understand that, because you're saying usually we say, how does the claim relate to the contacts in a particular state, say, in California? Here, we can't answer that question really, so we say, no, the contacts in California are nationwide contacts. And the plaintiff's claim relates to those nationwide contacts. It arises from those same nationwide contacts. But I have a second answer. Those nationwide contacts being a nationwide advertising campaign, a nationwide marketing campaign, and so forth. Exactly. But I have a second answer, and that is there is a critical additional contact here that gives rise to a very significant interest of California. And understanding, Justice Gorsuch, there's a big-picture question about the standard, but then we do have a set of facts here. The California court did rely on McKesson's role. It can't just be taken away from us, and it would be very confusing to the lower courts to simply cast it aside. And that is California has a very significant interest. What's confusing, though, about simply saying here's the correct test, reverse remand, go apply the correct test? Well, you're going to have to say something about McKesson, is all I'm saying, is that the other side really wants to put it entirely to the side. And there have been a lot of important questions here about the interests of California. And I just don't think you can get rid of BMS's most significant contact with California and say that it's irrelevant here. And that is California has a very significant interest in providing a complete adjudication of this claim, and so do all of the States. The problem in mass torts is that you can have multi-defendant actions, and you're going to require that they be litigated multiple times, so that a single plaintiff can't do that. Ginsburg-McKesson Could the Plavix claim have been brought as a class action? Fisherman The Plavix claim could have been, it depends on who we're talking about, but, yes, there could have been a class action. And I take the other, the necessary implication. Ginsburg-McKesson And where, if so, where could it be brought? Fisherman It could be brought, depending on whether you think McKesson plays a significant role, it would have been brought, I think, in California is the place where the class action would have been brought. I will, can I just bracket one important thing for you to realize about all of this litigation, Justice Ginsburg? It will illustrate, I think, how the States do work together. You mentioned all of the cases are out there, and Mr. Cadillac has stressed that. He just doesn't mention that there is a special master that governs, who is responsible for disputes relating to all of the litigation all around the country, both Federal and State. There is a great deal of collaboration here. Now, my point about the question is where? In New York. It's by agreement of the parties, and if there is a discovery is handled through all of the cases and all the disputes. Kennedy In the State court or the Southern district? Fisherman It is, I think that it is. Kennedy Federal or State master? Fisherman I don't think it is actually regarded that way. It's probably best regarded as Federal, but it's a person who resolves by agreement all of the discovery disputes, for example, across all of the litigation. The United States has a discussion of this in its brief about how this is relatively common. But the important thing about McKesson's role in the case is that California does have a significant interest in providing a single forum where this case against McKesson can be resolved, because look at the dilemma to McKesson. If McKesson loses the case, remember the out-of-State plaintiffs unquestionably can sue McKesson in California. If they win against McKesson, what is McKesson supposed to do? It is going to have to go litigate against Bristol-Myers somewhere else and try and get indemnification. Breyer, why isn't the answer to this, to my question, your question, which you raise a lot, well, this is going to be a terrible problem for mass torts. Answer, bring your case in Federal court. Now, why couldn't these 572 or whatever people bring their cases in Federal court? Fisherman Well, it would depend on things like the Justice Breyer. Breyer Not all can. Fisherman Not all can, right. Right. Breyer But a very large number. Fisherman Right. Breyer And then that very large number is no problem. They bring the case in the place where there is jurisdiction, it's consolidated in the multidistrict panel, and the multidistrict panel sends it to that venue for trial, which is convenient for all. Now, what they'll say, yes, they'll agree with that, and then they'll say the solution to this great mass tort problem is, that's what Federal courts are for, it doesn't work perfectly, but neither does yours work perfectly. Ginsburg Here, that's not possible. Breyer So what is the response to that? Ginsburg This case couldn't be in Federal court because there's no complete diversity. Breyer That's what you do is you could redesign the case. Breyer Yes, correct. Breyer Okay. A couple of things about that. That's true. Okay. A couple of things about that. Remember that a bunch of Mr. Cattell's points about one forum making choice of law decisions or having its own procedures that are different from the home forum are obviously true in MDL litigation. It raises the same constitutional questions. Breyer Well, but in MDL litigation, you're in Federal court, so the procedures are common across courts, in theory. Maybe more in theory than in practice. Gershengorn Maybe so, and also choice of law as to substantive law is his concern. So I do think there's a lot of overlap. But the other thing is this, two points, Justice Breyer. The first is, yes, there are other ways to do it, but that doesn't make the way we are doing it unconstitutional. What the Court has talked about here is minimum due process. Remember this. If Mr. Cattell walked up to me in California and handed me a subpoena, he could sue me in California on absolutely anything. Now, his client sold $918 million worth of plavix in California and says it violates the Constitution. Now, that may not be a lot of money necessarily to some people, but it is greater than the gross domestic product of 21 countries. Roberts, we're dealing with a jurisdictional rule, and when we do that, we want the rules to be as simple as possible. Gershengorn Yes. Roberts, and you have you started out with the four different factors and all that. But I'm particularly concerned, your brief at page 54, you say, well, if there were only a handful of people from California and hundreds from Texas or Tennessee, that would be a different case, by which I think you mean it wouldn't satisfy due process, right? Gershengorn Yes. And that is the point. Roberts, well, you have 86 in California and 575 elsewhere, and there's a difference, I suppose, between handfuls and hundreds and 86 and 575. But where exactly that difference is, it seems to me is going to be impossible to determine. Gershengorn Right. So, Mr. Chief Justice, it's true. Roberts, but that's the right. You say handful in California, hundreds Tennessee and Texas, no good. 86 in California, 575 somewhere else, okay. Gershengorn Right. And let me explain why that's true, because I agree that when the Court announced international shoe, it said quite clearly they're not going to be formulaic, there are going to be case-by-case judgments. What happened here is that there were two per se categorical rules. The first is there used to be general jurisdiction because they were doing business. And Penoyer said that we could get any of the – California could adjudicate anything in California and with respect to as – insofar as they had assets in the State. Those were clear categorical rules. You were convinced that those clear categorical rules could produce some unfairness, and so the Court announced a rule that is much more encompassing of the facts that it accounts for. If the Court wanted a clearer rule, the clear rules have existed. The Court has abandoned them in fairness to defendants. It's very hard, I think, to blame us for saying now we're going to look at the factors involved. Roberts' I know, but you're articulating a rule that requires businesses trying to figure out where to do business and plaintiffs where to sue and courts whether it's real. Your rule depends upon some line between handful and hundreds in 86 and 575. Where is it exactly? Gershengorn There is no precise number. I will say – Roberts If there were 20 in California and 575, would that satisfy due process? Gershengorn I think that it is – I cannot answer that question because it depends  Roberts But it's your case. You ought to be able to at least answer that. Gershengorn Well, I know my case is constitutional, Mr. Chief Justice. All I'm saying is that when you have the continuous and systematic exploitation of the market, where you have the ability to bring a bunch of cases together for the benefit of all of the States, it is true that there is going to be – and the reason that this is not a practical problem, I will tell you, is that the bar does what it did here, and that is it tries for efficiency purposes, even if for its own sake, to bring these cases together. So you really don't end up in situations where you have five in one place and people try and bring 500 in one place. Kagan Well, Mr. Gershengorn, it seems to me, on your theory, it could be zero California plaintiffs, because here is what you told me. You told me that the reason that this – that an Ohio citizen's claim arises out of the contacts in California is because the contacts in California are really nationwide contacts. And if that's so, it's met regardless of whether there are any California plaintiffs or not. So if that's your theory, it doesn't matter whether there are 86 or 20 or zero, because the contacts arise out of the nationwide slash California contacts. Gershengorn That's not correct. Kagan The claim arises out of that. Gershengorn That's not correct, because your test that you've articulated has two core parts to it. The first is the minimum contacts, the relationship between the contacts with the litigation, and what is absolutely critical to our case and was critical to the California case. Kagan Yeah, I don't think that's right, Mr. Goldstein. Our arising out of relating to test has always been about the first part of the inquiry. And then all the four factors is a backstop to that. It's an additional test after we decide whether your claim arises out of the forum contacts. Goldstein I agree, but we have to satisfy both in order for there to be specific jurisdiction. Justice Kagan, remember that it is the case that not that much weight in your prior precedents has been placed on the reasonableness factors, because these have always been general jurisdiction cases. These cases have always been brought as we're describing them. Sotomayor Sir, Goldstein, go back to articulating for me. Goldstein Yes. Sotomayor What is your definition of related to? Goldstein That is, it is the claim that is the same legal claim arising from the same operative facts, and the conduct is the same conduct that gives rise to the State litigation. And that is, it maps on perfectly, and that is really important because it means Sotomayor So is that a yes to Justice Kagan's question about it wouldn't matter if there were no California plaintiffs? Goldstein It would relate to, but it would not be constitutional because it would not be reasonable on the second part of the test, because they are already in California en masse. They are facing dozens upon dozens upon dozens of the same claim. Remember what the Court said in making the move from Penoyer to International Shoe, which I'd like to come back to. Breyer If you don't need to, I'm sorry, Mr. Goldstein, but if you don't need a single plaintiff to satisfy the first prong of the due process inquiry, again, what function does that first prong have left to do? Why doesn't it all just run into the second fundamental fairness test? What's left? Goldstein Well, because it gives the State the power, the territorial power, because it does have the power to adjudicate with respect to that conduct. It is both parts that are important. I had said that I wanted to come back to you about a bigger picture answer a little while ago, and that is, I do think it's really important that this may be the beginning or the middle of a multi-decade effort to try and take a look at the original understanding of the due process clause and do that across the Court's body of precedent. And we have urged the Court, if it is serious about that endeavor, to take a look at the relationship of International Shoe and Pennoyer, because from the founding of the country up through the adoption of the Fourteenth Amendment, it was perfectly clear and undisputed that California could adjudicate this claim at least up to and including the assets that they have in the State of California. They are within California's territory. There is no dispute about that. International Shoe and Schaefer say we are going to modernize our understanding of the Fourteenth Amendment. Robertson Great question. Is it presented? Yes, it is, because we affirmatively argue to you that you should overrule this Court's precedents or not extend them. We, of course, couldn't. It is an alternative ground for defending the judgment below. We specifically urge it in our brief. It is squarely in front of you. I do not think you can pass it by. And if the – if the power of the Court's decision to extend the precedents of the Fourteenth Amendment is not a good thing, then it is not a good thing. Ginsburg. Ginsburg. The one before. Good year. Good year in Daimler. Good year in confining general jurisdiction. And in this very case, it was originally argued as a general jurisdiction case, then we came out with Daimler, and then they said, oh, now we know it's not general jurisdiction, it's got to be specific. Yes. So one comment that you no doubt know has been made about this case is that it is an attempt to reintroduce general jurisdiction, which was lost in Daimler, by the back door. Yes, exactly. So important things about why that can't be right. I do think the driving concern in cases like Daimler and Goodyear about general jurisdiction is that you can hail somebody into the forum and sue them about absolutely anything. And this is a world of difference, because this is being – this suit is being brought on behalf – on the basis of their conduct in the State with respect to this drug. And the second is, I do think the Court recognized in Daimler quite explicitly that the retrenchment of general jurisdiction, how these cases had always been brought – and so there's no argument that we've – we're disrupting the legal system – the retrenchment of general jurisdiction was going to induce an examination of the Court's specific personal jurisdiction case to fill in the gaps. Breyer. Can you – this is – because you just started, too, with Justice Ginsburg. No general jurisdiction. Why am I here, says defendant? Because, says the judge, you have enough activity in our State for us to call you into court to answer to one of our citizens who was hurt. That's special jurisdiction, right? Yes, sir. But why am I here in respect to Smith? Because, you see, Smith isn't a citizen of our State. So where that answer sounded – this is logic, and what's bothering me about the whole case is it's logic and I don't know the practicalities. Right. But the – you see, the logic doesn't seem the same. I cannot say because you are a citizen of Texas, because that cuts no ice in California. So what is it I say in a single sentence that does make it clear to that defendant why he is here? You're already here on this claim and there is nothing unfair about having you have it with respect to another plaintiff, because that plaintiff could quite clearly get you estopped on the basis of how you were here. I was here for that purpose, not this. You're here. So once I'm here, I can now sue him and then we start drawing lines? All right. Well, Justice Breyer, all I'm saying is this point about nonmutual offensive collateral estoppel is a big deal. And that is when you have the identical claim, identical legal theory, identical operative facts, so take away all of his, it's all very different. The premise of this case is that it's all the same. Can I take it at? Well, that's the same thing applies just completely flipped. They can be doing the same thing in Ohio, saying we've got a lot of plaintiffs here from California, but we're going to let them sue in Ohio. And the same thing is going to happen in every other State. I don't see that it increases the efficiency at all. Oh, well, sir, remember, an important part of our analysis is that there is the governmental interest in that the litigation in this form does consolidate things and make it simpler. The State's interest in having 600 cases litigated together rather than in 50 different forms, it's material to our case that it does simplify things. But at the very least, the role of McKesson here does distinguish California from every other State. If they contract with a California company for the nationwide distribution of this drug, so that it's perfectly understandable that the legal issues that arise from that agreement and the distribution would be in this form, it's completely predictable and does distinguish California from everyone else. Kagan. Can I take you back to Justice Breyer's question about Federal courts and multidistrict litigation, because you didn't say something that makes me think, if you didn't say it, I don't understand. Assuming that there was subject matter jurisdiction, that there's diversity, still it seems to me that the way there's no nationwide service of process here. So the Federal courts have to mimic the State courts. Isn't that correct? Right. I can get to the end of your question. And that is, it's generally understood that it's the transferor court's specific personal jurisdiction. So if it's what would happen, Justice Breyer is saying, is you would have a lawsuit, a class action that would be removed to Federal court, specific jurisdiction would exist under Federal rule of civil procedure 4K there. Then it would be transferred for pretrial purposes to the MDL forum and then returned for purposes of trial. And so his point, I think, would be that it would be okay in Federal court in the MDL system. My answer back is that there are still lots of other objections about it being inconvenient, it's not where he's at, there would be choice of law issues that does really a lot of the fairness concerns that Mr. Cattell is talking about do arise in MDL, do arise in the New Jersey example he gives of specific personal jurisdiction. But at the very least, what I would say is that the Court can write an opinion that simply says, this is not your ordinary case. If it were your ordinary case and McKesson wasn't in it, if the members of the Court believed it, there wouldn't be jurisdiction. But they made this conscious choice to go into California with respect to this drug. And then the other argument that I do think has to be confronted is that at the very least, the Court has to consider that when it went to international shoe, it excluded the Penoyer basis of jurisdiction, which is the traditional power of the States from the founding within their territory that always existed. It doesn't seem unfair to me to say his clients did almost a billion dollars worth of business in the State of California. They have enormous assets that they have placed in the State, that they could be held liable up to the extent of those assets is not a violation of due process. Roberts If I heard you correctly, you said something about overruling cases. Is that right? Winsor If it were necessary to, we do not think it's necessary to, for multiple reasons, including that if you just simply say that the Penoyer basis of jurisdiction exists in addition to the international shoe basis of jurisdiction, we clearly would prevail up to at least being able to get the Bristol-Myers assets in California. Roberts Thank you, counsel. Three minutes, Mr. Katyal. Thank you, Mr. Chisholm. Sotomayor Mr. Katyal, assume a set of facts that I know have not been proven. Bristol-Myers sells the drugs to McKesson. McKesson distributes the drugs to all the other States. And all of the plaintiffs have taken McKesson drugs. Under your theory, could they sue McKesson and Bristol-Myers in California? Katyal Well, they might or might not. That's a purposeful availment stream of commerce theory, which we're not trying to, you know, push here. That's a very different thing. But I definitely Sotomayor Articulate your theory in a way that it wouldn't implicate, articulate your approximate cause and your causation theories in a way that wouldn't preclude that suit. Katyal So, Justice Sotomayor, my theory is exactly what this Court said in Rush, which is why his argument on McKesson doesn't work. It's, quote, plainly unconstitutional to assert jurisdiction over one defendant based on the activities of another. The requirements of international issue must be met as to each. So McKesson doesn't answer, help him, doesn't move the ball. You still have to show that the underlying conduct by the defendant did something. So here, when he talks about $918 million, we have no problem saying we're liable for the sales over there. The question was, what Justice Breyer was asking is, what about Mr. Smith? You know, I'm selling to Mr. Smith in Ohio, and, yes, I'm also separately selling $918 million in California, but you can't add those two things up together and confer personal jurisdiction. This Court has never done that, which is why his rule is a novel one. As Justice Kennedy said, I think that one of the goals here in this jurisprudence has been to say State A has an interest in combining State B's adjudicatory authority. Sotomayor, the real problem is that, following your theory, I'm not sure what Bristol-Meyers is doing there in the California case. They they they it was McKesson who sold the drug to the plaintiffs, not Bristol-Meyers directly. But I think that when they make an arrangement with the distributor to launch drugs in a particular location, they're liable for that. That's we've conceded that below. That's, I think, the way specific jurisdiction works. The reason why Federal Actions are permissible, and they could have been permissible here, Justice Breyer, is because the Fifth Amendment and Fourteenth Amendment operate differently. Justice Kennedy's point about State A and B doesn't apply to Federal government vis-a-vis States, and CAFA allows for jurisdiction right now over these claims. The only reason we're not in Federal court right now, Justice Ginsburg, is because they filed less than 100 claims in each action. They smurfed them. But ordinarily, these would be Federal court actions right now, and the rule we are seeking doesn't disturb that in any way, shape, or form. All we're saying is that when they have unrelated claims, uncausal claims in California with respect to the 33 other states, that's something as to which the other states have an interest, and the predictability here is incredibly important. Your opinion in Hertz, for example, picking up on the Chief Justice's question about business predictability is important. This is a jurisdictional matter, and clean rules for businesses to follow are important. They need to know if I sell to Mr. Smith, what happens? Their rule doesn't tell you. Roberts. Thank you, counsel. The case is submitted.